UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,  Case No. 05-80854

          Plaintiff,  Hon. Gerald E. Rosen

vs.

MARY KENNEDY,

          Defendant.
_____/

**OPINION AND ORDER REGARDING DEFENDANT'S
MOTION TO SUPPRESS EVIDENCE**

At a session of said Court, held in
The U.S. Courthouse, Detroit, Michigan
on   May 10, 2007

PRESENT: Honorable Gerald E. Rosen
                United States District Judge

I. INTRODUCTION

On September 22, 2005, Defendant Mary Kennedy was indicted for mail fraud in violation of 18 U.S.C. § 1341. Specifically, Defendant is charged with devising and executing a scheme to defraud and to obtain money from Merrill Lynch, the administrator of 401k retirement accounts for Chrysler Corporation employees by means of materially false and fraudulent pretenses and representations. Various business records in both paper and electronic form relating to Defendant's business of preparing hardship withdrawal requests for Chrysler employees for a fee were obtained by a search of Defendant's tan colored bus located at 3309 East Forrest in Detroit. The warrant for the search was authorized by a federal Magistrate Judge on February 6, 2003 and executed on February 7, 2003.

1

This matter is presently before the Court on Defendant's Motion to Suppress Evidence. In this Motion, Defendant argues that the search warrant was invalid because the information provided by Special Agent Julie Haymond of the Federal Bureau of Investigation in her affidavit was stale. The Court conducted a hearing on this matter on May 3, 2007, at which hearing Defendant further argued that the search warrant was not supported by probable cause, and, therefore, all evidence seized from Defendant on February 7, 2003 should be suppressed.

At the close of the hearing, the Court took this matter under advisement to determine (1) whether the time period between when Defendant allegedly assisted clients with falsely requesting hardship withdrawals and when the search warrant was executed rendered the information in Agent Haymond's affidavit stale and (2) whether the search warrant was supported by probable cause. This Opinion and Order sets forth the Court's ruling.

## II. PERTINENT FACTS

On February 6, 2003, a search warrant was obtained for:

[A] Tan Color Bus with the wording on the side of the bus that says WARREN ASSEMBLY OF GOD parked on a lot located at the Northeast Corner of the Intersection of East Forrest and Elmwood in Detroit, Michigan, the home located on the lot on which the bus sits is 3309 East Forrest.

The warrant was supported by an affidavit submitted by F.B.I. Agent Julie Haymond. The affidavit stated that for the preceding two and a half years, Agent Haymond has been on the Public Corruption Squad of the F.B.I., which is involved in the investigation of fraud against the government, and corrupt public officials and law enforcement officers. Agent Haymond stated in the affidavit that she became aware that Defendant Mary Kennedy might be involved in fraudulently making hardship withdrawal requests for money in Chrysler employees' 401k retirement accounts when she was contacted by Jean Zasacky, a Corporate Investigator of the

2

Daimler Chrysler Corporation on October 2, 2002, who discovered 86 fraudulent hardship withdrawal requests dating back to 1998. The affidavit also described interviews that Agent Haymond and Special Agent Jeffrey Dancer of the Department of Labor had with hardship withdrawal applicants Loretta Mayfield and Shirley Williams.

The affidavit stated that on December 13, 2002, Loretta Mayfield acknowledged that with the assistance of a person known to her as Mary Kennedy and/or Mary Howard, she falsely requested hardship withdrawals from her Chrysler 401k plan for the purchase of principal residences on September 18, 2002 and October 15, 2002. The affidavit also stated that on January 15, 2003, Shirley Williams acknowledged that a year earlier, she met with Defendant Kennedy who took care of all the paperwork needed to fraudulently withdraw money from her 401k.

Beginning in December 2002 and continuing through February 3, 2003, Agent Haymond conducted surveillance of the bus at 3309 East Forrest on several occasions. Agent Haymond stated in the affidavit that the bus remained in the same position throughout this period, and it had an extension cord running from the bus entrance to the residence. The affidavit further stated that on January 30, 2003, Special Agent Dancer also conducted surveillance and observed that there were no tire tracks in the snow, which would indicate no movement. Agent Dancer also reported that he observed an icicle hanging from the bus which was connected to the ground.

The affidavit further stated that Jean Zasacky advised Agent Haymond that Merrill Lynch continues to receive hardship withdrawal requests with the same handwriting and verbiage as those believed to have been fraudulently sent from Defendant Kennedy.

Agent Haymond stated in the affidavit that from her experience and training in investigating white collar crime, she knows that individuals involved in fraud often maintain records pertaining to their crimes as well as instrumentalities and fruits of their crimes at their businesses and residences. She also stated in the affidavit that based upon her experience and training as an agent, and upon the information cited in the affidavit, she had probable cause to believe that Mary Howard and others are involved in a scheme to violate 18 U.S.C. § 1341 and that evidence, instrumentalities, and fruits of those crimes would be on the bus located at 3309 East Forrest.

Based upon Agent Haymond's affidavit, on February 6, 2003, Magistrate Judge Donald A. Scheer issued a search warrant for the search of the tan colored bus.

On February 7, 2003, Special Agents Haymond and Dancer executed the search warrant and seized various business records from Defendant's bus.

### III. DISCUSSION

#### A. THE INFORMATION PROVIDED IN THE AFFIDAVIT BY SPECIAL AGENT HAYMOND WAS NOT STALE

The Sixth Circuit has defined staleness as "probable cause, while sufficient at some point in the past, is now insufficient as to evidence at a specific location." *United States v. Abboud*, 438 F.3d 554, 572 (6th Cir. 2006). The standard of review for a staleness determination is the same as the standard for determining the sufficiency of an affidavit. *See United States v. Canan*, 48 F.3d 954, 958-59 (6th Cir. 1995). The standard of review for the sufficiency of an affidavit "is whether the magistrate had a substantial basis for finding that the affidavit established probable cause to believe that the evidence would be found at the place cited." *United States v. Davidson*, 936 F.2d 856, 859 (6th Cir. 1991). In sum, a magistrate must

4

determine whether, under the totality of the circumstances, probable cause exists to issue the warrant. *See Canan*, 48 F.3d at 958. The Sixth Circuit has stated that "the function of a staleness test in the search warrant context is not to create an arbitrary time limitation within which discovered facts must be presented to a magistrate." *United States v. Spikes*, 158 F.3d 913, 923 (6th Cir. 1998); *Canan*, 48 F.3d at 959. Rather, a court must consider several factors in determining staleness including: the character of the crime (chance encounter in the night or regenerating conspiracy?), the criminal (nomadic or entrenched?), the thing to be seized (perishable and easily transferable or of enduring utility to its holder?), and the place to be searched (mere criminal forum of convenience or secure operational base?) *Abboud*, 438 F.3d at 572-73.

Defendant argues that the information Agent Haymond received from the interviews with Mayfield and Williams and reported in the affidavit is stale. As indicated in the affidavit, the most recent fraudulent hardship withdrawal allegedly made by Defendant for Mayfield was on October 15, 2002, four months prior to the issuance of the search warrant, and the fraudulent hardship withdrawal allegedly made by Defendant for Williams was on or about January 15, 2002, some 13 months prior to the issuance of the search warrant.

However, evidence of ongoing criminal activity will generally defeat a claim of staleness. *See e.g., Canan*, 48 F.3d at 958 (though conduct described in affidavit was four years old, evidence of ongoing nature defeated claim of staleness); *United States v. Greene*, 250 F.3d 471, 480-81 (6th Cir. 2001) (relying on the ongoing nature of the criminal activity, the court upheld a search warrant issued 23 months after the confidential informant's last purchase); *United States v. Henson*, 848 F.2d 1374, 1381-82 (6th Cir. 1998) (holding that an affidavit recounting a

fifteen-month investigation of odometer-tampering conspiracy suggested that evidence continued to exist because of the ongoing nature of the crime); *Abboud*, 438 F.3d at 573 ("[t]his Court's jurisprudence suggests that ongoing criminal activity *at a given time* may be sufficient to defeat a claim of staleness") (emphasis in original). In this case, there is evidence that Defendant's business was continuous and ongoing. The affidavit stated that fraudulent hardship withdrawal requests date back to 1998, and up until the date of the affidavit, Merrill Lynch continued to receive hardship withdrawal requests with the same handwriting and verbiage.

Moreover, where the criminal activity occurred in a "secure operational base," the passage of time becomes less significant. *Spikes*, 158 F.3d at 924 (where house had become "primary source of crack cocaine in town and . . . was regularly being manufactured on the premises," vintage of information less important); *United States v. Yates*, 132 F. Supp. 2d 559, 565 (E.D. Mich. 2001) ("The place to be searched was the defendant's home, suggesting that there was some permanence to the defendant's base of operation"); *Abboud*, 438 F.3d at 573 (finding that defendant's ownership of stores in the Cleveland area, coupled with an absence of any indication that he moved from place to place weighed against a finding of staleness). Here, Defendant's alleged criminal activity occurred in her office, which was a stationary bus located at her residence. That the bus was stationary was evidenced by an extension cord extending from the bus to the entrance of Defendant's residence, an icicle hanging from the bus and connected to the ground, and no tire tracks in the snow. This evidence shows that Defendant's criminal activity occurred in a "secure operational base," and Defendant was entrenched.

Furthermore, when a warrant primarily seeks business records at the target's home and business locations, the nature of the things to be seized and the place to be searched militate

6

against a finding of staleness.  *See Abboud*, 438 F.3d at 573-74 ("This Court has found that business records are a type of evidence that defy claims of staleness.")  In this case, Agent Haymond was seeking documents and records pertaining to Defendant's business of processing fraudulent hardship withdrawal requests.

All factors here weigh against a claim of staleness.  By nature one keeps business records for extended periods of time.  The entire point of creating such records is for preservation.  As a matter of fact, the affidavit stated "Howard kept all copies of the promissory note and other paperwork in a file. . . ."  Although there was somewhat of a substantial period of time between Mayfield and Williams' hardship withdrawal requests and the execution of the search warrant, the Court finds that this time period was not sufficiently long enough to render the information in the affidavit stale.  Furthermore, the Court finds that Defendant's alleged criminal activity was "ongoing," which provides an independent basis for rejecting Defendant's argument of staleness.

B.  THE SEARCH WARRANT WAS SUFFICIENTLY SUPPORTED BY THE AFFIDAVIT AND WAS ISSUED WITH PROBABLE CAUSE

Defendant also argues that the search warrant lacked probable cause and attacks the affidavit as deficient and lacking sufficient factual support.  Defendant claims that Special Agent Haymond's affidavit failed to set forth sufficient facts which would allow a neutral and detached magistrate to conclude that there was probable cause to believe that a mail fraud offense was being committed at the place sought to be searched.

"Probable cause" is defined as "reasonable grounds for belief supported by less than prima facie proof, but more than mere suspicion."  *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990).  The test for probable cause is satisfied where there is a "fair probability" that evidence of a crime will be found in a particular place.  *Illinois v. Gates*, 462 U.S. 213, 238

(1983). The operative test for determining probable cause is the "totality of the circumstances" test established by the Supreme Court in *Illinois v. Gates, supra*. In order to issue a search warrant, the magistrate must conclude that there is a fair probability that a search of a particular location will reveal evidence of a crime. In this regard, the Supreme Court has stated:

> In dealing with probable cause . . . as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. . . . The task of the issuing magistrate is simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*Illinois v. Gates*, 462 U.S. 213, 231 and 238 (1983).

In *United States v. Hatfield*, 599 F.2d 759, 761 (6th Cir. 1979), the Sixth Circuit has held that: "[O]nce a Magistrate has found probable cause and has issued a warrant, his judgment is conclusive unless arbitrarily exercised since the purpose of the Fourth Amendment has been served by his review of the affidavit." *Hatfield, supra* (quoting *United States v. Giacalone*, 541 F.2d 508, 513-14 (6th Cir. 1976)).

As indicated in her affidavit, Special Agent Haymond has been with the F.B.I. Public Corruption Squad for two and a half years. Further, the affidavit she submitted to the Magistrate Judge was based on information provided to her by two of the Defendant's alleged clients, Loretta Mayfield and Shirley Williams, her personal surveillance conducted of the bus, and her personal knowledge gained from Special Agent Dancer and Jean Zasacky, and from reviewing 82 fraudulent hardship withdrawal requests. The Magistrate Judge reviewed Agent Haymond's seven-page affidavit and found sufficient facts for him to conclude there was probable cause for the search and for the issuance of the warrant. The Magistrate Judge's conclusion, thus, was not

the result of an arbitrary exercise. Therefore, the Court finds that the Magistrate Judge's decision is conclusive and the search warrant was sufficiently supported by the affidavit and issued with probable cause.

C.  EVEN IF THERE WAS NO PROBABLE CAUSE FOR THE ISSUANCE OF THE SEARCH WARRANT, THE "GOOD FAITH" EXCEPTION WOULD RENDER THE EVIDENCE FOUND ADMISSIBLE

Even if the Court were to find that the Magistrate Judge erred in issuing the search warrant, the "good faith" exception established in *United States v. Leon*, 468 U.S. 891 (1984), would apply. Under *Leon*, evidence is admissible if seized by officers acting in good faith reliance on what they believed to be a facially valid warrant. The Supreme Court held that:

> [S]uppression of evidence obtained pursuant to a warrant should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule . . . suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause.

*United States v. Leon, supra* at 926.

None of the exceptions to the application of *Leon* is present in this case.

## CONCLUSION

Based upon the foregoing, the Court finds that the Defendant has failed to establish that the information relied upon by Special Agent Haymond was stale or that the officers lacked sufficient probable cause to search Defendant Kennedy's tan colored bus on February 7, 2003.

Accordingly,

IT IS HEREBY ORDERED that Defendant's Motion to Suppress Evidence obtained

from Defendant's tan colored bus is DENIED.

                         s/Gerald E. Rosen
                         Gerald E. Rosen
                         United States District Judge

Dated: May 10, 2007

I hereby certify that a copy of the foregoing document was served upon counsel of record on May 10, 2007, by electronic and/or ordinary mail.

                         s/LaShawn R. Saulsberry
                         Case Manager